Van Brunt, P. J.
This action was brought by the plaintiffs to recover damages because of an eviction from certain premises alleged to have been leased by the testator of the defendants to the assignor of the plaintiffs, which eviction and leasing were denied in the answer of the defendants, and certain counterclaims set up, which will hereafter be mentioned.
The lessor leased, in 1866, for a term of ten years, a lot or parcel of land on the westerly side of Gold street and fronting upon the East river, which was particularly described in the lease. The lease then.proceded as follows: “Also the dock and bulkhead in front" of said premises and foot of Gold street, with appurtenances, etc.”
After providing for the payment of rent, etc., the lease contains the further provision: “And the said parties of the second part further covenant and agree to and with the said party of the first part to do all repairs on said premises •and dock and bulkhead, and to keep the' same in good repair, and to dredge out the slip if the harbor commissioners shall require the same to be dredged out, and in case they shall fail or neglect to make said repairs or to dredge out said slip, the said party of the first part shall be at liberty so to do, and the expense thereof shall be added to and become a portion of the rent of said premises for the current quarter and be due and payable therewith.”
The plaintiffs claim that in 1871 they were evicted from a portion of the premises leased by the authorities of the city of Brooklyn, who built and constructed into the East river, from the foot, of Gold street, a- pier, and that they took possession of said wharf and charged wharfage for the use thereof.
The lease in question does-not seem necessarily to require the construction-claimed by the plaintiff. No intention to convey any right to Gold street, or any part thereof, can be spelled out from the language of the lease.
The premises demised are described as being situated upon the westerly side-of Gold street, and are carefully bounded by courses and distances which exclude every part of Gold street, and as a part of the premises the dock and bulkhead in front of the demised premises and foot of Gold street are mentioned.
This language does not by any means convey the idea that there was any intention to convey any rights to any bulkhead or dock lying in front of Gold street.
The reasonable construction of this language seems to be *548 that the dock and bulkhead in front of the demised premises were intended to be referred to, and that such dock and bulkhead were described as being at the foot of Gold street, merely as giving an additional and, perhaps, entirely unnecessary location.
It was the dock and bulkhead in front of the premises leased which appears to have been referred to, ahd no other.
It has been very difficult to follow the evidence in this case and to determine exactly what the witness meant in respect to the diagram as to which he testified, because there are no marks or means by which we can determine with that precision, which the case seems to require as to what points upon the diagram he indicated when giving his testimony, and this uncertainty has led to some embarrassment in fixing the precise status of the premises at the time of the making of the lease in question.
The language of the lease so carefully excluding any part of Gold street from the .demise, it would require plain and explicit words to justify a finding that the lessor intended to include in the lease that which had been expressly excluded.
The provision as to the dredging out the slip affords no clue to the intention of the parties. The slip was upon the easterly side of Gold street, and does not seem to have been regarded as part of the demised premises, and the provision as to the dredging it was only additional rental imposed, and does not in any manner purport to give the lessees any rights in respect thereto.
The land demised was on the westerly side of Gold street, and no rights whatever upon the easterly side of that street are attempted to be conveyed.
We cannot find, therefore, that any rights to the bulkhead in front of Gold street were attempted to be conveyed, and consequently there could have been no eviction. .
The plaintiffs in this action became by assignment the owners of a lease made by the defendants’ testator to one Sanchez of premises adjoining those hereinbefore mentioned.
The whole of these premises appear to have been used as a sugar refinery, and the buildings thereon were destroyed by fire on May 10, 1872.
In the leases were provisions for the payment of taxes, assessments, etc., and the Sanchez lease contained an agreement upon the part of the tenant to keep the premises and the steam engine, boilers and other machinery in good repair, and to surrender the same at the expiration of the term or other sooner termination of the lease in as good condition as they were, reasonable and proper use thereof only excepted.
*549 This lease also contained a provision that in case the buildings should be wholly _ destroyed by fire, the tenant should pay the ratable portion of said rent up to the day of the fire> and that the lease should thereupon terminate.
The plaintiffs did not pay certain taxes assessed upon a portion of the property, which the defendants were required to pay with the penalties, and did not remove their property from the Sanchez premises for a long time after the fire, and made no repairs to the machinery injured by the fire.
The defendants set up certain counterclaims in their answer to the plaintiffs’ claim for damages, based upon these facts.
The court allowed the defendants to take judgment for the pro rata rent from May 1st to May 10th, 1872, of the Sanchez premises and for the unpaid taxes with legal interest from the time the taxes became payable, and refused to allow a recovery for the penalties and extra interest which by law accrued upon the unpaid taxes, and refused to allow"the defendants to recover for the use and occupation of the Sanchez premises after the fire and for the damage caused by the fire to the machinery upon the Sanchez premises.
Whether the defendants were entitled to recover the penalties and extra interest paid by them upon the unpaid taxes, it is not necessary for us- to decide, as we can find no exception to the action of the court which brings up the question.
The court expressly admitted the evidence as to the amount of these payments, but at the conclusion of the trial the defendants made no request of the court' in respect thereto and appear to have acquiesced in the disposition which the court made of the matter.
Under the terms of the lease it seems to be clear that the plaintiffs were not liable for the loss of the engine, etc.
It is true that the lease contained a covenant to keep the engine, boilers and other machinery in repair; but the lease also contained a covenant that it should be terminated by fire, and after it had been so terminated there could be no breaches of its covenants.
The question as to the right of the defendants to recover for the value of the use and occupation of the premises after the fire presents a question of greater difficulty.
The tenant undoubtedly had the right to a reasonable time in which to remove his property after the termination of the lease by fire, and he could enter upon the premises for that purpose, without committing a trespass; and such entry and occupation would not make him liable for the full rent reserved in the lease for another year, as would *550 be the result in the case of a tenant holding over after the expiration of his term, but there is no reason why he should not be liable for the reasonable value of the premises which he continues to occupy for his own purposes. The landlord is deprived of their possession and the tenant has the benefit of the same, and therefore, compensation should be made therefor.
A large number of authorities have been cited upon this point by the counsel for both parties, but so far as we have been able to ascertain, they afford us no light upon the question under consideration.
_ It is reasonable and entirely in harmony with the relations of the partiés that the tenant after the termination of his lease by fire, should be required to pay the reasonable value of that which he continues to have the benefit of.
The learned justice, who presided at the trial • of this cause seems to have erred, therefore, in refusing to allow a recovery upon this branch of the case, and for this error we must reverse the judgment appealed from and order a new trial, without costs to either party.
Maoomber and Bartlett, JJ., concur.